T.C. Memo. 2018-137

UNITED STATES TAX COURT

ROBERT FORLIZZO AND JUDITH INGRAM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT FORLIZZO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 13271-14, 13272-14.          Filed August 27, 2018.

Robert Forlizzo and Judith Ingram, pro sese in docket No. 13271-14.

Robert Forlizzo, pro se in docket No. 13272-14.

<u>Christopher A. Pavilonis</u>, for respondent.

[*2]                     MEMORANDUM OPINION

GERBER, <u>Judge</u>:  After concessions the issue for decision is whether Mr. Forlizzo (petitioner) is entitled to loss deductions for 2008 relating to his interests in certain partnerships.[1]

## Background

Petitioner is an attorney licensed in the State of Florida who received a master of laws in taxation from New York University and primarily practiced real estate transactions law.  Petitioner, Paradise Development Group (PDG), and other real estate professionals formed multiple partnerships which were operated as special purpose entities (SPE) to acquire and develop real property in Florida, Georgia, Iowa, Pennsylvania, and South Carolina.  PDG historically sold the projects upon completion.

PDG created an SPE for each real estate venture in which it participated and controlled the general partner of each SPE.  Petitioner was a minority partner in several of the SPEs managed by PDG, including the 12 limited partnerships at

---

[1]These cases were reassigned from Chief Judge Foley to Senior Judge Gerber by an order dated July 26, 2018.  There was no trial or testimony, and the parties submitted these cases fully stipulated pursuant to Rule 122.  Unless otherwise indicated, all section references are to the Internal Revenue Code relating to the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] issue:  MTW-Houston, L.P., Paradise Shoppes of Perry, L.P., Win-88, Ltd., Win-Wexford, Ltd., Paradise Shoppes of Hammond Crossing, Ltd., OFP-Summerville, Ltd., Win-98, Ltd., Win-Adams Ridge, Ltd., Shoppes at Glen Lakes, Ltd., GKK-Mills Civic, L.P., OFP-Hutson, Ltd., and Win IV, Ltd. (collectively, Partnerships).  Petitioner also made nominal financial contributions to the Partnerships, received on average a 3% profits interest in each of the Partnerships, handled legal matters, and acted as the registered agent for the Partnerships.  As the registered agent, petitioner filed annual reports for some of the Partnerships before, during, and after 2008.

Each of the Partnerships had a principal place of business in Florida.  The Partnerships obtained loans (construction loans) from different banks to finance the construction of the Partnerships' real estate projects.  Petitioner, along with the other partners, personally guaranteed the construction loans.  He was also at risk with regard to the Partnerships' construction loans, and the construction loans were recourse liabilities with respect to him.  Before, during, and after 2008 the Partnerships amended some of the agreements relating to these construction loans.

Beginning in or about April 2007 PDG's management contributed available cash resources to the Partnerships so that the Partnerships could remain viable going concerns.  Management also began selling assets from several of the

[*4] Partnerships to fund the Partnerships' cashflow requirements. During 2008 the commercial and residential real estate markets declined, and as a result PDG closed several offices, laid off employees, and considered restructuring the Partnerships' debts, including the construction loans.

In October 2008 PDG initiated a meeting with its creditors, and PDG's founder and president gave a presentation on the state of the company and the Partnerships. PDG's management believed that the cashflow was inadequate for PDG to remain a going concern or service the debt and the liquidity of the principals, including PDG, had been depleted. Management, however, was concerned that the value of the projects of each of the Partnerships would be destroyed if the projects were halted. The presentation provided four available courses of action:

> 1) cease operations/shutdown/ liquidate existing projects and raw land in a Chapter 7 [bankruptcy] through a Trustee, 2) [d]eed in lieu of foreclosure on raw land and non-profitable projects and complete only profitable projects, 3) [c]omplet[e] existing construction project and control liquidation of raw land and completed projects in chapter 11 [bankruptcy] by the existing management team, [and] 4) [enter a] consensual work out with banks fund completion of construction project and control liquidation of raw land and completed projects in a[n] out of court restructuring.

PDG's goals for restructuring were to complete the restructuring outside of bankruptcy to maximize value for stakeholders and complete over 20 existing

[*5] projects. As of October 2008, 11 of the Partnerships had a positive net stabilized value[2] and a positive net current value, and 7 of the Partnerships had a negative "current lender exposure".[3] Petitioner's 2008 Schedules K-1, Partner's Share of Income, Deductions, Credits, Etc., also show that during 2008 nine of the Partnerships incurred losses and three generated income. Petitioner did not provide evidence (i.e., appraisals or valuations) establishing that any Partnership or subject real estate was valueless at the end of 2008. After the creditors' meeting and as of December 31, 2008, the underlying real estate owned by the Partnerships retained value, and the lenders and mortgage holders had not foreclosed on any of the properties owned by the Partnerships. Although PDG retained the services of a bankruptcy firm to assist with the restructuring, neither PDG nor the Partnerships had filed for bankruptcy. PDG and the partners of each of the SPEs continued negotiating the restructuring of the debt obligations into 2011.

On October 12, 2009, petitioner filed his 2008 individual Federal income tax return on which he did not report any losses relating to his interests in the

---

[2]Stabilized value is the value of a property after it reaches stabilized occupancy.

[3]We understand the term "lender exposure" to be the lender's risk of loss exposure in the event of default.

[*6] Partnerships.[4]  Petitioner determined that his interests in the Partnerships were worthless on December 31, 2008, but did not inform his 2008 tax return preparer of that determination.  On October 19, 2010, petitioner filed an amended 2008 Federal income tax return on which he claimed loss deductions relating to his interests in the Partnerships.

On March 7, 2014, respondent issued petitioner a notice of deficiency relating to 2008 and 2009 and issued petitioner and Ms. Ingram (petitioners) a notice of deficiency relating to 2010 and 2011.  On June 3, 2014, petitioners, while residing in Florida, timely filed petitions relating to the notices of deficiency, and on September 27, 2016, the Court filed petitioner's first amended petition, which alleged that the notices of deficiency did not reflect the loss deductions relating to his interests in the Partnerships.  On April 19, 2017, the Court filed petitioner's second amended petition contending that if petitioner's claimed 2008 worthless partnership interest loss deductions are denied, he would

---

[4]Petitioner did not file a joint Federal income tax return with Ms. Ingram until 2010 and 2011.

**[*7]** not be bound.[5]  These cases were consolidated by an order dated November 7, 2016.

Petitioner did not abandon his interests in the Partnerships during 2008, 2009, 2010, and 2011, and he subjectively concluded that his interests in the Partnerships were worthless as of December 31, 2008.  Because petitioners resided in Florida at the time the petition was filed, an appeal of these cases would normally be to the U.S. Court of Appeals for the Eleventh Circuit.  The only remaining issue for decision is whether a closed and completed transaction resulting in a loss occurred as of December 31, 2008.

Discussion

Pursuant to section 165(a), a taxpayer may claim an ordinary loss deduction relating to his investment in a partnership if the investment becomes worthless and sale or exchange treatment does not apply.[6]  See Echols v. Commissioner, 935 F.2d 703, 707 (5th Cir. 1991) (noting the Court did not address the issue of worthlessness), rev'g 93 T.C. 553 (1989); see also Tucker v. Commissioner, 841

---

[5]Petitioner reported recaptured income on petitioners' 2010 and 2011 joint Federal income tax returns relating to his 2008 worthless partnership interest loss deductions for MTW-Houston, L.P., OFP-Hutson, Ltd., and Win-88, Ltd.

[6]A loss from worthlessness of a partnership interest will be ordinary if there is neither an actual nor a deemed distribution to the partner pursuant to sec. 731, 741, or 752.  See Citron v. Commissioner, 97 T.C. 200, 216 (1991).

[*8] F.3d 1241, 1251 (11th Cir. 2016), aff'g T.C. Memo. 2015-185. "[A] loss [relating to a worthless interest in a partnership] must be evidenced by closed and completed transactions, fixed by identifiable events * * * actually sustained during the taxable year" in order to qualify as a deductible loss. Sec. 1.165-1(b), Income Tax Regs. Determining the year for which a taxpayer can claim a loss deduction evidenced by a closed and completed transaction is a question of fact. Boehm v. Commissioner, 326 U.S. 287, 293 (1945).

A decline in the assets' value or mere shrinkage is not sufficient to establish a closed or completed transaction necessary to justify a loss deduction pursuant to section 165(a). See Proesel v. Commissioner, 77 T.C. 992, 1006 (1981); sec. 1.165-1(b), Income Tax Regs. Formal bankruptcy, liquidation, insolvency, or market events and conditions can sufficiently establish a closed and completed transaction necessary to justify a loss deduction relating to a worthless interest in a partnership. See Tucker v. Commissioner, 841 F.3d at 1253 (holding that attempts to obtain additional capital or minimize losses established that property subject to recourse debt "retained enough value to avoid being 'worthless'"); Echols v. Commissioner, 935 F.2d at 708-709.

Petitioner bears the burden of proof of establishing that each of his interests in the Partnerships became worthless as the result of a closed and completed

**[\*9]** transaction during 2008.[7] <u>See</u> Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). Respondent contends that petitioner's recourse liabilities relating to the construction loans precluded him from claiming a worthlessness loss deduction relating to his interests in the Partnerships until a foreclosure sale, and that his interests in the Partnerships had value at the end of 2008. Petitioner argues on brief that respondent has focused on the assets of the Partnerships and he contends that his partnership interests had become worthless, even though the Partnerships held assets that retained value. He further contends that his interests in the Partnerships were worthless in 2008 regardless of the recourse liabilities to which the Partnerships' assets are subject because they relate to the underlying properties held by the Partnerships.

Each of petitioner's interests in the Partnerships must be tested for worthlessness as of December 31, 2008. <u>See</u> <u>Echols v. Commissioner</u>, 935 F.2d at 707; <u>see also</u> <u>Tucker v. Commissioner</u>, 841 F.3d at 1251. The Partnerships were SPEs with a sole purpose of holding and developing real properties which were encumbered by the construction loans. As of October 2008 the Partnerships

---

[7]The stipulations do not establish that petitioner maintained the required records or cooperated with respondent's requests. Sec. 7491(a)(2)(B). Accordingly the burden of proof does not shift to respondent and remains with petitioner. <u>See</u> sec. 7491(a).

[*10] generally had positive current and stabilized values, and the properties they held retained value.  Although the Partnerships generally incurred losses, petitioner did not submit any evidence relating to the values of the Partnerships or the underlying properties which would indicate that his interest in each of the Partnerships was worthless as of December 31, 2008.

To the contrary, there was value remaining in the Partnerships relating to the underlying properties which PDG and the partners, including petitioner, recognized would be lost if certain projects were not completed and properties were immediately foreclosed upon.  In addition, the Partnerships renegotiated the financing of the construction loans through 2011 to add value for the partners by minimizing losses.  In short, petitioner failed to meet his burden of proof and did not show that his interest in any of the Partnerships was worthless as of December 31, 2008.  See Rule 142(a); Tucker v. Commissioner, 841 F.3d at 1252; Echols v. Commissioner, 935 F.2d at 708-709.  We accordingly hold that, for 2008, petitioner was not entitled to deduct losses relating to his interest in any of the Partnerships.

To reflect the foregoing,

Decisions will be entered
under Rule 155.