**John C. ECHOLS and Deanna O. Echols, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 90–4231.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1991.

Bruce Locke, Shelley Cashion, Chamberlain, Hrdlicka, Houston, Tex., for petitioners-appellants.

Abraham N. M. Shashy, Jr., Chief Counsel, IRS, Doris D. Coles, Gary R. Allen, Chief, Charles Bricken, Shirley D. Peterson, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

ON PETITION FOR REHEARING

Before GARWOOD and WIENER, Circuit Judges, and VELA,* District Judge.

PER CURIAM:

IT IS ORDERED that the Petition for Rehearing filed by Respondent–Appellee (Commissioner) in the above entitled and numbered cause be and the same is hereby DENIED.

In his Petition for Rehearing, the Commissioner states that "at this juncture" he does not ask for reconsideration and reversal of our decision to the extent we held that the taxpayers were entitled to a loss deduction under Code § 165(a) on the determination that taxpayers abandoned their interest in the partnership. Rather, urges the Commissioner, we should withdraw our alternate holding that the taxpayers were entitled, as they urged in the Tax Court and again on appeal, to take a loss deduction under Code § 165(a) based on their determination, grounded in demonstrable facts, that their interest in the partnership was "worthless." The Commissioner complains that our treatment of worthlessness "threatens substantial and lasting damage to the law governing losses under § 165(a)...." We disagree, seeing no such threat of damage to the law but rather a misinterpretation of our opinion by the Commissioner and a misconception of our opinion's import and effect on the law.

Citing *A.J. Industries, Inc. v. United States,*[1] the Commissioner reiterates truisms—such as, "A loss is not sustained merely by virtue of a diminution in value or loss of potential profit" and "the mere worthlessness of that partnership interest is not sufficient to entitle them to a deduction"—none of which are contravened by our treatment of worthlessness. But the Commissioner's insistence that "[o]nly in relation to securities under I.R.C. § 165(g) can a loss be taken upon the occurrence of

---

* District Judge of the Southern District of Texas, sitting by designation.

1. 503 F.2d 660 (9th Cir.1974).

worthlessness alone" is neither complete nor wholly true. While Code § 165(g) does provide a positive rule for treatment of worthless securities, it does not follow that worthlessness is not a valid basis upon which to deduct losses incurred in connection with any other type of property.

■ The Commissioner advances an argument which, if accepted, would totally subsume "worthlessness" in "abandonment." While still giving lip service to the otherwise firmly established principle that transfer of title is not a prerequisite to a loss deduction grounded either in abandonment or worthlessness, the Commissioner would have us hold that there can be no loss deduction under Code § 165 without either a transfer of title or an act of abandonment. But inasmuch as abandonment supports a loss deduction for a property that has not necessarily become worthless, how would the Commissioner account for the existence of a whole body of tax law dealing with loss deductions based on worthlessness if abandonment were an essential element? Despite the Commissioner's wishful thinking to the contrary, taxpayers are entitled to take loss deductions under Code § 165(a), not only for assets that the taxpayer has abandoned, with or without their having become worthless, but also for assets that have become worthless, with or without having been abandoned. Worthlessness and abandonment are separate and distinct concepts and are not, as urged by the Commissioner, simply two sides of the same coin—abandonment of the worthless property or abandonment of a property with worth.

■ Conceding that transfer of title is not a prerequisite, the Commissioner continues to insist that worthlessness must be coupled with an identifiable event "such as abandonment, sale, exchange, forfeiture or foreclosure...." How odd, inasmuch as each "identifiable event" in that list other than abandonment involves divestiture of title! We did not, as intimated by the Commissioner, hold that in a worthlessness situation "an act evidencing a closed and completed transaction was unnecessary." We

do, however, continue to maintain that, for assets not expressly covered by a Code section or a Treasury Regulation, neither the "identifiable events" nor the "completed transactions" need be a nominate property transaction such as sale, exchange, donation—or abandonment, need involve the asset in question directly, or need include the taxpayer as a party.

In *Denman v. Brumback*,[2] relied on by the Commissioner, the taxpayer confirmed his subjective determination of worthlessness by abandoning real estate and writing it off. Those were overt and objective affirmations by the taxpayer of the subjective determination of worthlessness. But not only do those objective manifestations not divest the taxpayer of title; they also do not exhaust the list of events or transactions to which a taxpayer may point in objectively confirming his determination of worthlessness.

■ In his Petition for Rehearing, the Commissioner continues to cite only *abandonment* cases that recite the need for manifest expression of intent to abandon. Those propositions were discussed and approved in the portion of our opinion dealing with abandonment. Again, throughout his application for rehearing, the Commissioner repeatedly asserts—without citing support from the Code, Treasury Regulations, or Supreme Court or Fifth Circuit decisions—that a taxpayer cannot exercise his own business judgment and discretion in determining when an asset is worthless to him unless he also either divests himself of title or performs an act of abandonment. But, we repeat, if such were required, then the entire concept of worthlessness as a basis for loss deduction under Code § 165(a) would be swallowed by its sibling concept of abandonment. Like transfer of title, abandonment simply is not a prerequisite to a loss deduction for worthlessness; abandonment and worthlessness are separate but equal grounds for loss deductions.

Again, the Commissioner would have us hold that, other than transactions that divest the taxpayer's title, abandonment is

---

2. 58 F.2d 128 (6th Cir.1932).

the only closed and completed transaction or identifiable event that can support a loss deduction based on worthlessness. That simply is not the law. Abandonment is not necessary when a taxpayer is able to show *any* closed and completed transaction or *any* identifiable event supporting worthlessness. For example, in *Rhodes v. Commissioner*, 100 F.2d 966 (6th Cir.1939), the taxpayer had contracted to buy land in Florida and had made several installment payments, only to see hurricanes strike the property in the consecutive years of 1926 and 1927, covering the land with debris and deposits of sand. After the second hurricane, the taxpayer could find no purchasers for the property and concluded that it was worthless. He refused to make further payments under the contract, wrote off the amount he had paid as a loss, and claimed a worthlessness loss for 1927 under Code § 214(a), predecessor to current Code § 165. Then, in 1928, he accepted payment of $1,100.00 in consideration of his transfer of the land contract. The IRS disallowed the loss claimed in 1927, theorizing that the taxpayer had retained title to the contract throughout that year and assigned it for a cash consideration in the next.

The *Rhodes* court stated that both the amount of the loss and an identifiable event clearly showing the year in which the loss occurred must be shown to substantiate a loss deduction based on worthlessness. The court held that more than a mere showing that business is generally depressed is required to establish worthlessness but, at the other extreme, it is not necessary for the taxpayer to divest himself of legal title. More significantly, the court found that the hurricanes of 1926 and 1927, coupled with the collapse of land speculation in Florida in 1927, the taxpayer's unsuccessful efforts to sell the land, and his book entries charging off the properties in 1927, constituted *identifiable events* establishing the worthlessness of the land in 1927.

■ By comparison, the occurrences affecting the limited partnership in *Echols* and the actions of the taxpayers closely paralleled those in *Rhodes*. As in *Echols*,

the court in *Rhodes* found that the taxpayer had abandoned the land, but his abandonment was really no more than merely refusing to continue making payments under the contract, analogous to the Echols' refusal to continue contributing funds to the limited partnership. Additionally, the *abandonment* in *Rhodes* was only one of several factors the court considered in searching for an identifiable event establishing *worthlessness*. *Rhodes* stands for the proposition that abandonment is not the exclusive way to establish worthlessness of an asset the title to which remains vested in the taxpayer.

In *Proesel v. Commissioner*, 77 TC 992 (1981), an agreement was entered into under which the taxpayer was to receive payments for the production of a movie. A loss was deducted on grounds that the taxpayer's right had become worthless in 1972 because it was unlikely that the movie would ever be distributed. The court stated that the types of "closed and completed transactions" and "identifiable events" needed for a showing of worthlessness include "a sale, an abandonment, *or other acts or events which reflect the fact that the property is worthless,*" albeit a mere decline in value is not sufficient to establish a loss. (emphasis added). Even though the court held against the taxpayer in *Proesel*, it expressly recognized that the contract could have been worthless for tax purposes if the taxpayer had demonstrated that the contract had been breached and that litigation would be fruitless. The *Proesel* court clearly based its holding on an analysis of the value or absence of value of the asset, supporting the conclusion that a taxpayer is not necessarily required to abandon an asset in order to take a loss deduction based on worthlessness.

■ *Rhodes* and *Proesel* establish that, although an act of abandonment by the taxpayer may be one of several factors in the analysis of whether the taxpayer's subjective determination of an asset's worthlessness is sustainable, abandonment is not an indispensable requirement for a worthlessness deduction under Code § 165. These cases teach that in order to comply

with Reg. § 1.165–1(d)(1), the analysis should focus on objective events confirming the taxpayer's subjective determination that the asset was in fact worthless in the year in which the loss was claimed. That does not mean, however, that a deduction under § 165(a) would not be available for the year of disposition by transfer of ownership or abandonment, or for the year in which the taxpayer determines that the property has become worthless to him, merely because different completed transactions or identifiable events occurring in a prior year may have been sufficient to support a loss deduction based on that property's worthlessness in such prior year, for either this or some other taxpayer. Neither is the converse implied, i.e., that a taxpayer should be denied a loss deduction based on worthlessness in one year merely because he happens to retain ownership throughout that year and then disposes of the property or abandons it in a subsequent year—or that additional transactions or events which might also support a conclusion of worthlessness occur in the subsequent year.

The Commissioner misinterprets our alternative holding in *Echols* as abolishing the requirement that a taxpayer show one or more "closed and completed transactions ... fixed by identifiable events" in the year for which the loss is claimed under Code § 165. Our opinion does no such thing. It does, however, stand for the propositions that such transactions and events are not limited to divestitures of title or abandonment; and that the taxpayer need not be a "party" to the event or transaction, and that the event or transaction need not directly involve the asset in question. Our opinion expressly holds that the test for worthlessness is a combination of subjective and objective indicia: a subjective determination by the taxpayer of the fact and the year of worthlessness to him, and the existence of objective factors reflecting completed transaction(s) and identifiable event(s) in the year in question—not limited, however, to transactions and events that rise to the level of divestiture of title or legal abandonment.

The Commissioner's argument was specifically rejected in *Gordon, Tejon,* and Revenue Ruling 54–581. *Gordon* recognized that, while the "identifiable event" may be a sale or an abandonment, "that is not applicable ... where there is ample basis for concluding that the present year furnishes developments having a decisive and unfavorable effect upon value, ..." The *Tejon* court held, as do we, that the "closed and completed event" was the partnership's insolvency. Furthermore, Revenue Ruling 54–581 supports the proposition that a loss is deductible in the year it is sustained, and not exclusively in a subsequent year when an overt act of abandonment occurs. As disposition of the asset, either by divestiture of title or abandonment, is not an essential requirement, it is inescapable that closed and completed transactions by which worthlessness is evidenced may include an infinite variety of transactions and events. In the instant case, the third party developers' default and the inability of the partners to restructure the underlying debt were both closed and completed events that evidenced worthlessness. There was nothing open and pending about those matters.

The Commissioner complains that our opinion in *Echols* permits a taxpayer to "select" the year of deduction merely by making an entirely subjective determination of worthlessness. Such a reading of our opinion is overbroad. *Echols* does not hold that the taxpayer may *arbitrarily* deduct a loss in any year he chooses. Rather, *Echols* holds that a loss based on worthlessness is deductible in a year that the taxpayer can and does properly deem the property worthless to him, provided the worthlessness is demonstrable by identifiable events or closed transactions. Although the subjective determination of worthlessness belongs to the taxpayer, his conclusion still must be supported by objective indicia rather than mere whim. In his reliance on *Gordon,* the Commissioner failed to mention that the *Gordon* court recognized that the required identifiable events need not necessarily include an act of abandonment, but may be other events such as an increase in expense of opera-

tions, excess of liens over potential value, the need for costly renovations, and the like.

The irony in the Commissioner's lament—that our opinion creates the potential for mischief by allowing a taxpayer to manipulate the timing of his loss deduction—is that the position advocated by the Commissioner would itself create an even greater potential for mischief, albeit perpetrated by the IRS. On the one hand, the Commissioner insists that a loss is deductible only in the year it becomes worthless, quoting *A.J. Industries,* and implicitly (if inadvisably) relying on Revenue Ruling 54–581 and *Meyer,* 57–1 U.S. TC 9609. On the other hand, the Commissioner posits that an overt act of abandonment is required for a worthlessness deduction. Thus, if an asset should become worthless in Year 1 but the taxpayer should take no steps to abandon it until Year 2, the inimical result of the Commissioner's position would be a disallowed deduction in Year 1 for lack of abandonment and a disallowed deduction in Year 2 as well because the property first became worthless in Year 1—a classic Catch–22 position for taxpayers. As such, the Commissioner would (or could) deny the taxpayer the use of an act of abandonment to determine the year of deduction but also would (or could) use the act of abandonment to dictate the timing of the deduction that best fits the government's revenue collection efforts.

Were equity at issue it would surely require that neither the taxpayer nor the Commissioner be allowed arbitrarily to manipulate the timing of the deduction based on an act of abandonment. Rather, the loss must be deductible when the taxpayer determines that the asset has become worthless to him, based on his own economic situation as well as on identifiable events and closed and completed transactions—but not just events and transactions that either divest title or constitute abandonment. For the foregoing reasons our opinion in this appeal stands.