T.C. Summary Opinion 2003-19

UNITED STATES TAX COURT

PRECISION PINE & TIMBER, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11951-00S.                    Filed March 12, 2003.

Lorin D. Porter (an officer), for petitioner.

<u>Charles B. Burnett</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

Respondent determined deficiencies of $28,113 and $32,450 in petitioner's Federal income taxes for fiscal years ending (FYE) March 31, 1993 and 1996, respectively.  The sole issue for decision is whether, for FYE March 31, 1996, petitioner properly deducted losses on its covenants not to compete.  The decision on the loss deductions determines petitioner's entitlement to a deduction for a net operating loss carryback to FYE March 31, 1993.

Some of the facts have been stipulated and are so found. The exhibits received into evidence are incorporated herein by reference.  At the time the petition in this case was filed, petitioner's corporate offices were located in Heber, Arizona.

## Background

Petitioner operates as a commercial logging business in northern Arizona.  The viability of the logging industry depends on the availability of harvestable timber.  To ensure an adequate supply of timber, petitioner began to purchase assets and timber sales contracts[1] from its competitors.

In September 1987, petitioner leased real property, including a sawmill, for logging activities from Parker Lumber Company (Parker).  The Parker lease agreement included a covenant

---

[1] For purposes of this opinion, a timber sales contract is a contract between a landowner and a logging company which establishes the right of the company to harvest timber on a specified piece of land, and what the company "was obligated to do for that timber."

not to compete for a period of 15 years.  The parties allocated $50,000 of the contract price to the covenant.

In April 1991, petitioner purchased two timber sales contracts and some equipment from Reidhead Lumber Company (Reidhead).  The Reidhead sales agreement included a covenant not to compete for a period of 6 years.  The parties allocated $250,000 of the contract price to the covenant.

In March 1993, petitioner purchased assets related to a sawmill operation in Payson, Arizona, including two timber sales contracts and some equipment from Kaibab Industries (Kaibab). The Kaibab purchase agreement included a covenant not to compete for a period ending September 1, 2000.  The agreement did not make any specific allocations of the contract price.  Petitioner, however, filed a Form 8594, Asset Acquisition Statement, with its Federal income tax return for FYE March 31, 1994, which allocated $200,000 of the contract price to the covenant.  Kaibab also filed a Form 8594, but allocated $0 of the contract price to the covenant.

In 1993, the Mexican Spotted Owl was added to the list of endangered species protected under the Endangered Species Act, 16 U.S.C. secs. 1531-1543 (1994).  In 1995, the United States District Court for the District of Arizona issued a prohibitory injunction banning logging operations in northern Arizona and New Mexico to protect the Mexican Spotted Owl's habitat.

Prior to the listing of the Mexican Spotted Owl, petitioner operated three sawmills in Arizona. At one point, there were approximately 12 private sector mills operating in Arizona. At the time of trial, petitioner claimed that it was the only operating mill in Arizona, and that they were operating on a "shoestring budget". Petitioner attributes the collapse of the Arizona logging industry to the listing of the Mexican Spotted Owl as an endangered species and the issuance of the prohibitory injunction.

The primary sources of timber in northern Arizona are controlled by the U.S. Forest Service (USFS), which is vested with specific regulatory powers. Since the injunction, the USFS has effectively ceased issuing new timber sales contracts. Since the injunction was first issued in 1995 there has been essentially no logging in Arizona. While the injunction, at times, has allowed for minimal logging, there have been no changes in the USFS regulatory scheme.

For FYE March 31, 1996, petitioner deducted $185,172 as the combined balance of the unamortized value of the three covenants not to compete. The deduction allowed a net operating loss to be carried back to FYE March 31, 1993, resulting in additional tax savings in that year. Respondent disallowed the entire deduction and the net operating loss carryback.

## Discussion

Respondent's position is that petitioner is not justified in taking loss deductions relating to the unamortized balance of the noncompetition agreements. Respondent believes that the injunction issued by the U.S. District Court of Arizona did not interfere with the noncompetition agreements, and the correct tax treatment was to continue to ratably deduct the values of the noncompetition agreements over their respective lives.

Petitioner argues that the downturn in the local logging industry, due to the Mexican Spotted Owl's addition to the endangered species list and the ensuing injunction issued by the district court, makes the noncompetition agreements economically useless because of reasonably foreseeable economic changes due to legislative or regulatory action. Petitioner argues that it is entitled to its loss deductions in FYE March 31, 1996, and the loss carryback to FYE March 31, 1993, pursuant to section 167 and its governing regulations. Specifically, petitioner cites 1.167(a)-9, Income Tax Regs., as authority for its deductions.

Respondent argues that section 1.167(a)-8, Income Tax Regs., controls the outcome of this case. Respondent argues that because petitioner alleges that the obsolescence in this case was sudden, the penultimate sentence of 1.167(a)-9, Income Tax Regs., shifts the analysis to section 1.167(a)-8, Income Tax Regs. Basing his position on ABCO Oil Corp. v. Commissioner, T.C. Memo.

1990-40, respondent argues that the requirements of section 1.167(a)-8, Income Tax Regs., are not met under the facts of this case.

Deductions are a matter of legislative grace. They are allowable only if there is clear statutory authority providing therefor. New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934).

Generally, section 167(a) allows a taxpayer to take depreciation deductions for property used in its trade or business. The term "property" includes intangibles such as covenants not to compete, and the rules for the allowance of amortization deductions for intangibles are set forth in section 1.167(a)-3, Income Tax Regs.[2] Citizens & S. Corp. v. Commissioner, 91 T.C. 463, 479 (1988), affd. per curiam 919 F.2d 1492 (11th Cir. 1990). To conclude that an intangible asset is amortizable it must have a determinable value and a limited useful life. Newark Morning Ledger Co. v. United States, 507 U.S. 546, 556 n.9 (1993). Because a covenant not to compete is an intangible asset with a limited useful life it may be amortized over the course of its life. Warsaw Photographic

---

[2] Sec. 197, Amortization of Goodwill and Certain other Intangibles, generally applies with respect to property acquired after Aug. 10, 1993. See Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13261(g), 107 Stat. 540; see also Spencer v. Commissioner, 110 T.C. 62, 87 n.30 (1998), affd. without published opinion 194 F.3d 1324 (11th Cir. 1999).

Associates, Inc. v. Commissioner, 84 T.C. 21, 48 (1985); O'Dell & Co. v. Commissioner, 61 T.C. 461, 467 (1974). Because each of petitioner's covenants not to compete was entered into prior to the effective date of current section 197, we must apply the law as in effect for property acquired prior to August 11, 1993.

Section 1.167(a)-9, Income Tax Regs., provides that the depreciation allowance includes an allowance for "normal" obsolescence. If the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing the useful life, a change to the new and shorter life will be permitted.

"Extraordinary obsolescence" however, refers to the sudden loss or termination of the usefulness of depreciable property caused by some unexpected and unforeseen external force. Extraordinary obsolescence results in either the shortening of previously determined useful life if the obsolescence occurs over a period greater than 1 taxable year, or in a loss if the useful life is completely and suddenly terminated within 1 taxable year. Coors Porcelain Co. v. Commissioner, 52 T.C. 682, 689-692 (1969), affd. 429 F.2d 1 (10th Cir. 1970); sec. 1.167(a)-8, -9, Income Tax Regs.

Section 1.167(a)-9, Income Tax Regs., applies in situations where a taxpayer seeks to shorten the useful life of an

amortizable asset due to any of a variety of factors including "legislative or regulatory action."  The regulation is controlling only when assets become obsolete over a period of time greater than 1 year.  Id.  Assuming that petitioner's noncompetition agreements became obsolete as a result of a "sudden" event, the 1995 prohibitory injunction, the Court must look elsewhere for guidance.

When an amortizable asset becomes obsolete within 1 taxable year, a taxpayer may be entitled to a loss deduction.  Keller Street Dev. Co. v. Commissioner, 323 F.2d 166, 171 (9th Cir. 1963), affg. in part, and revg. in part 37 T.C. 559 (1961); Moise v. Burnet, 52 F.2d 1071 (9th Cir. 1931); Coors Porcelain Co. v. Commissioner, supra at 692.  The appropriate statutory provision for the allowance of a loss deduction for extraordinary obsolescence of a depreciable asset occurring within 1 year is section 165(a).  See sec. 1.165-1, Income Tax Regs.  Generally, section 1.167(a)-8, Income Tax Regs., provides the rules governing the recognition, amount, and basis for gain or loss resulting from the sudden termination of the usefulness of depreciable assets.  Coors Porcelain Co. v. Commissioner, supra at 692; secs. 1.165-2(c) and 1.167(a)-8(a), -9, Income Tax Regs.

Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise.  To be allowable as a deduction under section 165(a),

a loss must be evidenced by a closed and completed transaction, fixed by identifiable events, and actually sustained during the taxable year.  Echols v. Commissioner, 950 F.2d 209, 211 (5th Cir. 1991), affg. per curiam 935 F.2d 703 (1991), revg. and remanding 93 T.C. 553 (1989); sec. 1.165-1(b), (d)(1), Income Tax Regs.  Substance and not mere form shall govern in determining a deductible loss.  See Cottage Sav. Association v. Commissioner, 499 U.S. 554, 567-568 (1991); Boehm v. Commissioner, 326 U.S. 287, 292 (1945).

Section 165(g) allows as a deduction any loss sustained during a single taxable year from any security which has become worthless during that year.  For other assets, section 1.167(a)-8, Income Tax Regs., typically requires that the asset be "retired".  Taxpayers, however, are entitled to a loss deduction for assets which are not securities that have not been "retired" but have become worthless during the tax year in question. Echols v. Commissioner, 950 F.2d 209, 211 (5th Cir. 1991). Taxpayers are entitled to loss deductions for depreciable intangible assets such as licenses and noncompetition agreements. See Estate of Wood v. Commissioner, 823 F.2d 1553 (9th Cir. 1987), affg. T.C. Memo. 1985-517; Oak Harbor Freight Lines, Inc. v. Commissioner, T.C. Memo. 1999-291.  Taxpayers are entitled to take loss deductions under section 165 "not only for assets that the taxpayer has abandoned, with or without their having become

worthless, but also for assets that have become worthless, with or without having been abandoned."  Echols v. Commissioner, supra at 211 n.1.

Whether the noncompetition agreements became worthless during FYE March 31, 1996, is a question of fact.  See Boehm v. Commissioner, supra at 293.  The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test.  See Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930).  In Echols v. Commissioner, supra at 213, the court stated:

> the test for worthlessness is a combination of subjective and objective indicia:  a subjective determination by the taxpayer of the fact and the year of worthlessness to him, and the existence of objective factors reflecting completed transaction(s) and identifiable event(s) in the year in question--not limited, however, to transactions and events that rise to the level of divestiture of title or legal abandonment.

See also Middleton v. Commissioner, 77 T.C. 310, 322 (1981) (there is no requirement that a taxpayer relinquish title in order to establish a loss if such loss is reasonably certain in fact and ascertainable in amount), affd. per curiam 693 F.2d 124 (11th Cir. 1982).

To determine whether a taxpayer is eligible for a loss deduction pursuant to section 1.165-1(d)(1), Income Tax Regs., the focus of this Court's analysis must be on objective events confirming the taxpayer's subjective determination that the asset

was in fact worthless in the year the losses were claimed. Echols v. Commissioner, supra at 212-213.

Closed and completed transactions and identifiable events are not limited to divestitures of title or abandonment, the taxpayer need not be a "party" to the events or transactions, and the events or transactions need not directly involve the asset in question. Id. at 213. The requirement of worthlessness is a "de minimis rule that the taxpayer does not have to prove that a given asset is absolutely, positively without any value whatsoever." Echols v. Commissioner, 935 F.2d 703, 708 n.2 (5th Cir. 1991), revg. and remanding 93 T.C. 553 (1989). A taxpayer must make a reasonable showing that the asset was in fact valueless to him at the time selected by the taxpayer--not that its fair market value necessarily fell to or below zero in that year. Id. at 708.

We decide this case without regard to the burden of proof. Accordingly, we need not decide whether section 7491(a)(1) is applicable in this case. See Higbee v. Commissioner, 116 T.C. 438 (2001).

Respondent's position appears to be that no objective factors reflect completed transactions and identifiable events that establish worthlessness of the covenants not to compete in FYE March 31, 1996. The Court disagrees.

In A.J. Indus., Inc. v. United States, 503 F.2d 660, 670 (9th Cir. 1974), the court concluded that "the subjective judgment of the taxpayer * * * as to whether the business assets [of the taxpayer] will in the future have value is entitled to great weight and a court is not justified in substituting its business judgment for a reasonable, well-founded judgment of the taxpayer."

The first prong of the worthlessness test requires that the Court determine whether the taxpayer made a subjective determination that the asset in question was worthless in the tax year in question. Id.

The 1993 addition of the Mexican Spotted Owl to the endangered species list created circumstances which made the continuation of logging in northern Arizona economically unfeasible. When the district court issued its 1995 injunction, petitioner determined that no additional timber sales contracts would be issued. Consequently, petitioner concluded that the injunction had effectively eliminated competition in the Arizona logging industry. Once the injunction took effect, Arizona's timber supply was essentially cut off. Without an adequate supply of timber, the Arizona logging industry collapsed.

Once petitioner concluded that competition and supply had been judicially eliminated, it determined that its covenants not to compete were worthless. It is the practical worthlessness of

the covenants and not the bare possibility of what might happen in the uncertain future that is the important factor. Lucas v. American Code Co., supra; Henley v. United States, 184 Ct. Cl. 315, 396 F.2d 956, 962 (1968). The tax laws do not require a taxpayer to be an incorrigible optimist. United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398, 403 (1927).

For the tax year of the injunction, petitioner's corporate tax return for FYE March 31, 1996, reflected this subjective determination by reporting the unamortized amounts as a loss. The Court is satisfied that petitioner made the subjective determination that its covenants not to compete were worthless in FYE March 31, 1996, and that it no longer assigned any value to them.

The second prong of the worthlessness test requires taxpayers to show a closed and completed transaction and an identifiable event evidencing the destruction of an asset's value. Assets may not be considered worthless, even when they have no liquidated value, if there is a reasonable hope and expectation that they will become valuable in the future. See Lawson v. Commissioner, 42 B.T.A. 1103, 1108 (1940). But, "such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it." Morton v. Commissioner, 38 B.T.A. 1270,

1278 (1938), affd. 112 F.2d 320 (7th Cir. 1940). These events are considered identifiable because they would be known by everyone interested in the business of the corporation. The essential element for tax purposes is that a particular event destroyed the potential value of the asset. Id.

In 1995, as a result of the Mexican Spotted Owl's addition to the endangered species list, the U.S. District Court of Arizona issued a prohibitory injunction banning logging in areas serving as the owl's habitat. Once the injunction was issued, there were no additional timber sales contracts to compete for and logging companies were unable to continue work on their existing contracts. In 1995, there was no reasonable hope or expectation that the injunction on logging would be lifted within the period remaining on the noncompetition agreements because there was no reason to assume that the owl would be removed from the endangered species list.

It was objectively reasonable to assume that petitioner's covenants not to compete were worthless because the ban on logging, which included the geographical areas covered by the noncompetition agreements, made it legally impossible for any of the covenantees to compete. As a result, Reidhead, Parker, and Kaibab were unable to reenter the logging industry because no new logging contracts were being issued. The functional elimination

of Arizona's logging industry rendered worthless most industry specific intangible assets.

After the issuance of the injunction, petitioner was unable to derive any benefit from the covenants not to compete. No outside party would have purchased the noncompetition agreements or assigned any value to the covenants on the purchase of petitioner's assets. Any remaining value of the noncompetition agreements terminated upon the issuance of the prohibitory injunction. The injunction served as a death knell to any individual or company seeking to enter or reenter the Arizona logging industry. Furthermore, respondent offered no evidence to show that the covenants not to compete retained any value. In short, the covenants were not worth a hoot.

Because the injunction issued by the district court was effective in 1995, petitioner actually sustained losses on its covenants not to compete in 1995. See Corra Resources, Ltd. v. Commissioner, 945 F.2d 224 (7th Cir. 1991) (loss realized in the year in which mineral lease expired), affg. T.C. Memo 1990-133; George Freitas Dairy, Inc. v. United States, 582 F.2d 500 (9th Cir. 1978) (milk processors' acceptance of producers' cancellation of milk production contract was the identifiable event).

The Court is satisfied that the issuance of the injunction serves as a sufficient identifiable event, in FYE March 31, 1996,

to satisfy the objective portion of the worthlessness test. Thus, the Court finds that sufficient factors objectively support the worthlessness of petitioner's covenants not to compete. See Oak Harbor Freight Lines, Inc. v. Commissioner, supra (An act of Congress rendered motor carrier authorities worthless because all rights associated with the authorities were eliminated). As a result, the Court finds that all three of petitioner's covenants not to compete became worthless on the date the prohibitory injunction was issued.

Respondent argues that ABCO Oil Corp. v. Commissioner, T.C. Memo. 1990-40, controls the outcome of this case. In ABCO Oil Corp., the taxpayer purchased some of a competitor's assets. And, in a related but separate agreement, the taxpayer entered into individual 5-year noncompetition agreements with three of the competitor's shareholders. Two of the three covenantees died before the end of the 5-year noncompetition period. The taxpayer deducted the amounts it still owed to the deceased covenantees. The taxpayer argued that the noncompetition agreements became worthless and that the deduction should be allowed pursuant to section 1.167(a)-8(a)(3), Income Tax Regs. The Court in ABCO Oil Corp. held that the death of the covenantees did not make the covenants worthless; rather, the covenantees' "deaths extended forever the duration of noncompetition." Id. Respondent argues that ABCO Oil Corp. controls the decision in this case because of

its factual similarities and because the result in this case depends on the law as it pertains to section 1.167(a)-8(a)(3), Income Tax Regs. Respondent's argument is flawed on both accounts.

The facts in ABCO Oil Corp. are distinguishable from those here. Respondent's position seems to be that the death of the covenantees in ABCO Oil Corp. is analogous to the district court's injunction in this case. Respondent argues that because petitioner and the three covenantees were still contractually bound by the agreements the covenants retained their current values. In ABCO Oil Corp., the taxpayer continued to make payments on the noncompetition agreements to the deceased covenantees for more than 4 years after their deaths. Thus, it was logical for the Court in ABCO Oil Corp. to conclude that the covenants were not worthless because no subjective determination of worthlessness was made by the taxpayer during the taxable year in issue.

In this case, the prohibitory injunction rendered petitioner's noncompetition agreements worthless. In FYE March 31, 1996, petitioner was cognizant of its losses and promptly reported the losses on its corporate tax return. The facts in ABCO Oil Corp. bear on a situation different from the one presented here, and as a result, the Court's holding in ABCO Oil Corp. is inapposite to the present case.

For the reasons discussed above, the Court holds that petitioner's recognition of the loss on its covenants not to compete in FYE March 31, 1996, was proper.

Modification of Form 8594

Petitioner, at trial and in its trial memorandum, posits that it incorrectly allocated $200,000 to the covenant not to compete in the Kaibab Agreement.  Petitioner's position is that "the amount allocated by the taxpayer to the noncompete agreement should be allocated to the timber contracts acquired from Kaibab."  "That is what we should have done, you know." Petitioner was apparently unaware, when it filed its Form 8594 for the Kaibab agreement, that Kaibab did not allocate any of the contract price to the noncompete agreement.

It is unclear whether petitioner now seeks to modify its position as to its original allocation.  Regardless of whether petitioner seeks to advance this argument, it is clear that petitioner did not present this as an argument in the alternative.

Assuming it now wishes to allocate $0 to the covenant, petitioner must satisfy this Court that provisions of the Internal Revenue Code, the Tax Court Rules of Practice and Procedure, or case law allow for such a modification.  Respondent contends that this Court must apply the rule in Commissioner v.

Danielson, 378 F.2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965).

In Danielson, the Court of Appeals for the Third Circuit held that a party to a contract allocating part of the purchase price to a covenant not to compete can modify that agreement only by offering evidence that would be admissible in an action between the parties to alter the agreement or to show its unenforceability. In Throndson v. Commissioner, 457 F.2d 1022, 1025 (9th Cir. 1972), affg. Schmitz v. Commissioner, 51 T.C. 306 (1968), the Court of Appeals for the Ninth Circuit did not decide whether the Danielson rule applied because there was no binding contract, which is required to apply the Danielson rule. Therefore, we do not apply it in cases appealable to the Court of Appeals for the Ninth Circuit. See Anderson v. Commissioner, 92 T.C. 138, 171 (1989). Furthermore, the Danielson rule does not apply in this case because the parties to the Kaibab agreement did not specifically allocate any part of the purchase price to the covenant not to compete. See Campbell v. United States, 228 Ct. Cl. 661, 661 F.2d 209, 217-218 (1981).

A taxpayer who files a Form 8594 and follows the proper procedure for reporting the value of an asset pursuant to a purchase agreement must follow certain requirements to show an increase or decrease in the allocated value of the asset. Sec. 1.1060-1T(h)(2), Temporary Income Tax Regs., 53 Fed. Reg. 27042

(July 18, 1988). The taxpayer is required to file a new Form 8594 in the tax year that such modification is properly taken into account. Id. Petitioner presented no evidence to show that a new Form 8594, or anything substantially similar, was filed to reflect the desired changes in the allocation value. Petitioner's reasons for failure to file a new Form 8594 are unclear.

Without a new Form 8594 or any other legal or factual justification allowing a modification, we see no reason to allocate $0 to the Kaibab covenant not to compete. See Hosp. Corp. of Am. v. Commissioner, T.C. Memo. 1996-559. Petitioner, therefore, is not entitled to change the value it allocated to the Kaibab covenant not to compete.

As a result, the Court holds that petitioner is entitled to recognize the losses on its covenants not to compete for FYE March 31, 1996, and to its deduction for a net operating loss carryback for FYE March 31, 1993.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for petitioner.