T.C. Memo. 2015-222

UNITED STATES TAX COURT

RANDY STEINBERG AND BETINA STEINBERG, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JON M. NISSLEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 28810-13, 28865-13.          Filed November 19, 2015.

Ward R. Nyhus, Jr., for petitioners.

Cassidy B. Collins and Katherine Holmes Ankeny, for respondent.

MEMORANDUM OPINION

NEGA, Judge: These cases have been consolidated for purposes of trial,

briefing, and opinion. Respondent determined a deficiency in petitioners Randy

Steinberg and Betina Steinberg's Federal income tax of $254,520 and an accuracy-

**[*2]** related penalty under section 6662 of $50,904.[1] Respondent determined a deficiency in petitioner Jon M. Nissley's Federal income tax of $20,014 and an accuracy-related penalty under section 6662 of $4,003. The issues for decision are whether (1) Kelmark Tow, LLC (Kelmark), Mr. Steinberg's and Mr. Nissley's wholly owned limited liability company, sustained an $800,000 loss in tax year 2009 with respect to a towing contract with the City of Los Angeles, and (2) whether petitioners are liable for section 6662 accuracy-related penalties for tax year 2009.

## Background

All of the facts in these cases, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below. All petitioners resided in California when they filed their petitions.

### Petitioners' Towing Business

Mr. Steinberg and Mr. Nissley are both members of Kelmark. Mr. Steinberg owns a 90% interest in the profits and losses of Kelmark whereas Mr. Nissley owns a 10% interest.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3]  Official Police Garages (OPGs) in the City of Los Angeles are regulated through a contract process.  In 2005 Kelmark purchased a towing contract, Agreement No. C-106804, from Nissley Corp. for $1,200,000 in a transaction in which Kelmark acquired all of the assets constituting Nissley Corp. towing business.  No other intangibles apart from the towing contract were purchased as part of the transaction.  The towing contract was effective as of June 28, 2004.  The Los Angeles City Council (city council) approved the sale and transfer of the contract to Kelmark on November 24, 2004, and Kelmark placed the contract in service on January 1, 2005.

Upon the purchase of the towing contract, Kelmark obtained the sole and exclusive right to operate the OPG for the Southeast Area of the Los Angeles Police Department (LAPD).  The contract provided for a five-year term ending on June 27, 2009.  At the end of the five-year term, the City of Los Angeles could, at its sole option, extend the towing contract for an additional five-year term.

On February 22, 2008, the city council drafted a motion proposing that the city reexamine its system of OPGs.  The original OPG model had been created in the 1940s and paired each LAPD division with one OPG.  Due to growth in the city and the LAPD over the preceding decades, the divisional concept of OPGs had become outdated.  In the mid-1980s non-law-enforcement traffic officers

[*4] separated from the LAPD and began to operate under the Department of Transportation (DOT).  The DOT and the LAPD work closely with one another, but they have separate command structures and boundaries.  The February 22, 2008, motion directed the LAPD to provide recommendations as to how the city could improve the current OPG system so as to better serve the changing boundaries of the DOT and the LAPD.

The Board of Police Commissioners responded to the city council via letter on June 19, 2008.  The Board of Police Commissioners recommended that the city council direct the city attorney to draft the necessary amendments to the Los Angeles Municipal Code to establish permanent OPG geographic boundaries.  On August 12, 2008, the city council concurred with the recommendation of the Board of Police Commissioners.

Amending the city's Municipal Code to establish permanent OPG boundaries necessitated the drafting of new OPG contracts.  The Board of Police Commissioners recommended that, rather than entering into new five-year contracts with existing contractors, the city council extend the existing OPG contracts for a period of 180 days in order to prevent an interruption of OPG services.  On December 4, 2009, the Mayor of the City of Los Angeles transmitted the Board of Police Commissioner's request to the city council.  The city council

[*5] did not adopt the Board of Police Commissioner's recommendation until February 12, 2010. The February 12, 2010, adoption of the recommendation had the effect of retroactively changing the expiration date of Kelmark's towing contract from June 27 to December 27, 2009.[2] In the meantime, on December 8, 2009, the Board of Police Commissioners notified Kelmark in writing that (1) its first five-year term had expired, and (2) if Kelmark wished to be considered for a second five-year term, it needed to submit a written request for renewal to the Board of Police Commissioners no later than February 15, 2010.

On April 9, 2010, the city council approved an ordinance that amended the Los Angeles Municipal Code and established permanent OPG boundaries. The ordinance became effective on June 1, 2010. The city council and Kelmark executed a first amendment to Agreement No. C-106804 (Amendment to Agreement No. C-106804) on June 8, 2010, that stated, inter alia, that (1) on May 26, 2010, the city council had approved the exercise of the option to extend Kelmark's contract for an additional five-year term, (2) the term of Agreement No. C-106804 had expired on December 27, 2009, and (3) both parties agreed to

---

[2]The date that is 180 days from June 27, 2009, is actually December 24, 2009. However, all documentation relating to the 180-day extension refers to December 27, 2009, as the new expiration date of Kelmark's towing contract, and we will treat it as such.

[*6] extend the term of Agreement No. C-106804 to June 26, 2014. The Amendment to Agreement No. C-106804 includes a ratification clause which states: "If [Kelmark's] services were required prior to the execution of this Amendment, and services were performed in accordance with the terms and conditions of this Amendment, they are hereby ratified."

Despite the upheaval surrounding OPGs across the city, Kelmark was the only provider of towing services for the LAPD in the Southeast Area and was the only operator of the Southeast Area OPG during 2009. Kelmark continued to operate the Southeast Area OPG during the entire taxable year ending December 31, 2009. Kelmark submitted monthly summary reports to the Board of Police Commissioners for each month of tax year 2009. The monthly reports included information on the number of vehicles impounded, stored, released, or sold during each calendar month of 2009.

Tax Returns Relating to Tax Year 2009

Kelmark timely filed its Form 1065, U.S. Return of Partnership Income, for tax year 2009. On August 18, 2011, Kelmark filed an amended Form 1065 for tax year 2009. The amended Form 1065 increased Kelmark's deduction for Other Deductions: Amortization Expense from $240,000 on the originally filed return to $880,000.

**[\*7]** Mr. and Mrs. Steinberg timely filed a joint Form 1040, U.S. Individual Income Tax Return, for tax year 2009. Mr. Nissley also timely filed a Form 1040 for tax year 2009. On May 12, 2011, Mr. Nissley filed a Form 1040X, Amended U.S. Individual Income Tax Return, for tax year 2009.[3] On October 11, 2011, Mr. and Mrs. Steinberg filed a Form 1040X for tax year 2009. The Forms 1040X increased Mr. Nissley's and the Steinbergs' shares of passthrough losses from Kelmark pursuant to amended Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., received from the partnership.

On May 3, 2013, respondent issued Kelmark a Form 4605-A, Examination Changes--Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations, for tax year 2009 that disallowed $800,000 of Kelmark's claimed deductions for Other Deductions: Amortization Expense. On September 12, 2013, respondent issued a notice of deficiency for tax year 2009 to Mr. and Mrs. Steinberg that disallowed a deduction for passthrough losses of

---

[3]The parties stipulated that Mr. Nissley filed a Form 1040X on May 12, 2011, but Kelmark did not file an amended Form 1065 until August 18, 2011. Although it may seem anomalous that Mr. Nissley amended his personal income tax return to account for an increased share of partnership losses before Kelmark's filing of an amended return to increase partnership losses, stipulations are generally treated as conclusive admissions. Rule 91(e). Since the order in which Mr. Nissley and Kelmark filed amended returns is not relevant to the Court's decision in this matter, we ignore the discrepancy in the stipulated filing dates.

**[*8]** $720,000 from Kelmark and determined an accuracy-related penalty under section 6662. On September 12, 2013, respondent issued a notice of deficiency for tax year 2009 to Mr. Nissley that increased State income tax refunds received by $11,250,[4] disallowed a deduction for passthrough losses of $67,655 from Kelmark, and determined an accuracy-related penalty under section 6662.

## Discussion

### I.      Burden of Proof for Deficiencies in Income Tax

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); see Welch v. Helvering, 290 U.S. 111, 115 (1933). However, because our conclusions are based on the preponderance of evidence, we need not decide whether petitioners or respondent bears the burden of proof. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

### II.     Applicable Law

Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must comply with specific requirements for any deductions claimed.

---

[4]Respondent conceded this issue in a stipulation signed January 21, 2015.

[*9] See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. at 440.

Section 165(a) provides that a taxpayer may deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Individual taxpayers may deduct only certain losses, including, inter alia, losses incurred in a trade or business or in a transaction entered into for profit although not connected with a trade or business. Sec. 165(c). In general, a loss is deductible only for the year in which it is sustained. Sec. 1.165-1(d)(1), Income Tax Regs. To be allowable as a deduction, the loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except for disaster losses, actually sustained during the taxable year. Id. para. (b). Further, only a bona fide loss is allowable as a deduction. Id. Substance and not mere form governs in determining whether a taxpayer has suffered a deductible loss. Id.

Section 197(a) allows a taxpayer an amortization deduction with respect to any section 197 intangible. Section 197 intangibles include any license, permit, or other right granted by a governmental unit or an agency or instrumentality thereof. Sec. 197(d)(1)(D). Generally, a taxpayer must amortize the adjusted basis of the section 197 intangible ratably over a 15-year period beginning with the month in which the intangible was acquired. Sec. 197(a).

[*10] III.    Parties' Arguments

The parties agree that Agreement No. C-106804 is a section 197 intangible that must be amortized over a 15-year period.[5]  However, they disagree as to whether petitioners suffered passthrough losses under section 165 in tax year 2009 when the contract lapsed on either June 27 or December 27, 2009, and was not amended until June 8, 2010.  We briefly summarize the parties' arguments here.

A.    Petitioners' Argument

Petitioners argue that since the express terms of Agreement No. C-106804 state that it must terminate on June 27, 2009, the contract became worthless in 2009 and they are therefore entitled to loss deductions under section 165 for tax year 2009 equal to the remaining basis in the contract.  Petitioners argue that State or local law determines property rights and ask the Court to take judicial notice of Los Angeles Municipal Code sec. 80.77.4, which limits the duration of OPG contracts to a five-year term.  Petitioners argue that general rules of contract interpretation require the Court to ascertain the intent of the parties from the plain

---

[5]Sec. 197(e)(4)(D) excludes from the definition of a sec. 197 intangible any right under a contract if such right has a fixed duration of less than 15 years but only if such right is not acquired in a transaction (or series of related transactions) involving the acquisition of assets constituting a trade or business or a substantial portion thereof.  Since Kelmark purchased the five-year contract from Nissley Corp. in a transaction in which Kelmark acquired all of the assets constituting Nissley Corp.'s towing business, sec. 197(e)(4)(D) does not apply.

**[\*11]** language of the contract itself. Since the plain language of the contract and city law require termination of the contract after five years, petitioners argue that Kelmark and the City of Los Angeles intended for the contract to terminate in 2009. For support of their argument that the contract became worthless in 2009, petitioners argue that the contract had no commercial value after its termination in June 2009. Petitioners cite the definition of "fair value" as defined by the Financial Accounting Standards Board and "fair market value" as defined in section 20.2031-1(b), Estate Tax Regs.

B.     Respondent's Argument

Respondent argues that notwithstanding the interim period between the expiration of the original contract and the signing of the amendment, petitioners did not, in substance, sustain uncompensated passthrough losses. Respondent cites section 1.165-1(b), Income Tax Regs., which provides that "[s]ubstance and not mere form shall govern" in determining whether a taxpayer has suffered a loss. Like petitioners, respondent also urges us to consider rules of contract interpretation, arguing that (1) the city's option to renew was part of a larger contract, (2) substantial performance applies to the time periods stated in the contract, and (3) general rules governing the construction and operation of contracts should override the rules of offer and acceptance.

[*12] Respondent argues that the contract did not become worthless in 2009 because (1) Kelmark continued to enjoy the same benefits of towing for the Southwest Area OPG after the towing contract expired by its own terms on June 27, 2009, (2) the city delayed extending the towing contract to include details of the new OPG ordinance in all existing OPG contracts, and Kelmark was not at risk of losing its OPG contract, (3) the city was not required to exercise its option to extend the contract before the expiration of the initial term, (4) the city did in fact exercise its option to extend, first with a temporary extension and then with an amendment to the initial contract, and (5) the terms of the amendment reflect the intentions of Kelmark and the city to include the interim period as part of the towing contract.

Respondent notes that the amendment extended the terms of the contract until June 26, 2014, which is five years after the original term expired on June 27, 2009. Respondent argues that if the parties did not intend to include the interim period in the towing contract, the amendment would have provided for a five-year term beginning on the date the amendment was signed on June 8, 2010. Additionally, respondent notes the ratification clause in the amendment that explicitly ratified acts performed during the interim period to include them within the terms of the towing contract. Further, respondent argues that the Court must

**[\*13]** consider the original contract and the amendment as one agreement because the amendment incorporated the original contract into its terms. Finally, respondent notes that financial accounting and tax accounting have different objectives, and regardless of the contract's value for financial accounting purposes, petitioners are not entitled to a deduction under section 165 for tax purposes.

IV.    Analysis

Whether Kelmark's towing contract became worthless in tax year 2009 is partly a question of fact. See, e.g., Boehm v. Commissioner, 326 U.S. 287, 293 (1945) (whether corporate stock became worthless during a given year is a question of fact); Favia v. Commissioner, T.C. Memo. 2002-154 (worthlessness and taxable year in which a security becomes worthless are questions of fact). The requirement that losses be deducted for the year in which they are sustained calls for a practical rather than a legal test. Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930). Substance and not mere form governs in determining whether a taxpayer has suffered a deductible loss. Sec. 1.165-1(b), Income Tax Regs. A taxpayer is entitled to a loss deduction under section 165 for an asset that has become worthless, even if the taxpayer does not take steps to abandon the asset. Echols v. Commissioner, 950 F.2d 209, 211 (5th Cir. 1991), denying reh'g to 935 F.2d 703,

[*14] rev'g and remanding 93 T.C. 553 (1989). The test for worthlessness is both subjective and objective: "a subjective determination by the taxpayer of the fact and the year of worthlessness to him, and the existence of objective factors reflecting completed transaction(s) and identifiable event(s) in the year in question". Id. at 213.

Petitioners urge us to focus only on the provisions of the original contract regarding termination in tax year 2009. We disagree that the original contract language is dispositive of whether petitioners sustained passthrough losses in 2009. Both the Code and caselaw require that we consider all facts and circumstances surrounding Kelmark's towing contract with the City of Los Angeles.

When we consider Kelmark's conduct in conjunction with the original contract, the amendment to the contract, and the Los Angeles Municipal Code, it is clear that Kelmark did not, in substance, suffer a loss in 2009 even if the contract expired in form. Kelmark continued to enjoy the benefits of the towing contract even after it initially expired on June 27, 2009, and subsequently expired after the 180-day extension on December 27, 2009. It continued to operate the Southeast Area OPG, and no other party provided towing services for the LAPD in the Southeast Area during any part of 2009. Kelmark also continued to provide

[*15] monthly summary reports to the LAPD for the Southeast Area OPG. In short nothing material occurred in 2009 that changed the relationship Kelmark maintained with the LAPD in the Southeast Area or the City of Los Angeles. This fact favors a finding that the contract was neither subjectively worthless in petitioners' eyes nor objectively worthless given the surrounding facts and circumstances. See Echols v. Commissioner, 950 F.2d at 213.

Further, we must consider the original contract in conjunction with the amendment, which clearly amends and extends Agreement No. C-106804. The plain language of the amendment evidences an intent by Kelmark and the City of Los Angeles to include the interim period within the amendment's terms. Not only does the amendment call for an additional five-year term that ends exactly five years after the expiration date of the original contract, the amendment also includes a clause that specifically ratifies services that Kelmark performed before the execution of the amendment. The fact that the original contract includes no such ratification clause indicates that the signatories to the amendment added it to specifically recognize the interim period.

Petitioners urge us to consider State and local law in determining the property rights under the contract. While they are correct that State law controls in determining the nature of the legal interest a taxpayer has in property, see, e.g.,

[*16] <u>Aquilino v. United States</u>, 363 U.S. 509, 513 (1960), petitioners do not cite any applicable California State laws or caselaw to support their argument that the contract became worthless in 2009.  Petitioners cite only Los Angeles City Municipal Code sec. 80.77.4, requiring OPG contracts to be awarded for a fixed five-year term as support for their argument that the original contract became worthless after five years.  In fact Los Angeles City Municipal Code sec. 80.77.4 further convinces us that Kelmark and the city intended to include the interim period within the terms of the amendment.  Otherwise the amendment would have created a term of shortly over four years rather than a five-year term as required by city law.

We also agree with respondent that a contract's value for financial accounting purposes does not determine its value for Federal income tax accounting purposes.  Financial and tax accounting have vastly different objectives.  <u>Thor Power Tool Co. v. Commissioner</u>, 439 U.S. 522, 542-543 (1979) ("The primary goal of financial accounting is to provide useful information to management, shareholders, creditors, and others properly interested; * * * [t]he primary goal of the income tax system, in contrast, is the equitable collection of revenue. * * * [A]ny presumptive equivalency between tax and financial accounting would be unacceptable.").

[*17] Petitioners also cite the definition of fair market value under section 20.2031-1(b), Estate Tax Regs., arguing that the contract had no commercial value because, inter alia "[t]here were no remaining rights to tow or store * * * [and it] could not be assigned for value". In contrast to their assertion, Kelmark did in fact retain the rights to tow and store vehicles during all of 2009 as evidenced by the fact that only Kelmark provided towing services for the LAPD in the Southeast Area, and Kelmark was the sole operator of the Southeast Area OPG. Further, Kelmark's rights to tow and store vehicles in 2009 were ratified by the ratification clause in the Amendment to Agreement No. C-106804. Petitioners' argument that the contract "could not be assigned for value" is a red herring considering that (1) the city council has final approval over the assignment of towing contracts and (2) during 2009, the city council intentionally did not enter into new towing contracts because of the impending changes to the Los Angeles Municipal Code. In sum, we disagree that application of the willing buyer/willing seller standard under section 20.2031-1(b), Estate Tax Regs., would render the contract valueless in 2009.

Moreover, to be deductible, a loss must be evidenced by closed and completed transactions. Sec. 1.165-1(b), Income Tax Regs. There was no closed and completed transaction between petitioners and the City of Los Angeles in

[*18] 2009. As previously stated, Kelmark continued to enjoy the benefits of a contractual relationship with the City of Los Angeles during the entirety of 2009. The fact that the amendment was not signed until 2010, after the debate about setting permanent OPG boundaries had been resolved, clearly shows that there was no closed and completed transaction that would support finding that Kelmark suffered a loss in 2009. See, e.g., Nicolazzi v. Commissioner, 79 T.C. 109, 131-132 (1982) (finding no closed and completed transaction in 1976 where taxpayer purchased a lottery lease in 1976 and did not exercise a put option until 1977), aff'd, 722 F.2d 324 (6th Cir. 1983). Accordingly, we find that Kelmark's contract with the City of Los Angeles did not become worthless in 2009, and petitioners are not entitled to deductions under section 165 equal to the then-remaining unamortized basis in the contract.

V.     Section 6662 Accuracy-Related Penalties

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. at 446. However, once the Commissioner has met the burden of production, the taxpayer bears the

**[\*19]** burden of proving that the penalty is inappropriate. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-449.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to, inter alia, negligence or disregard of rules or regulations, or to any substantial understatement of income tax. Respondent argues that petitioners should be liable for the section 6662(a) and (b)(1) and (2) penalties because their underpayments are due to substantial understatements of their 2009 Federal income tax and because petitioners acted negligently and disregarded rules and regulations by claiming loss deductions under section 165 to which they were not entitled. Because we conclude that petitioners acted negligently in claiming loss deductions under section 165 to which they were not entitled, we need not consider whether their underpayments are due to substantial understatements of their 2009 Federal income tax.

Section 6662(c) defines negligence as any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Negligence is indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return that would seem to a reasonable and prudent person

**[\*20]** to be "too good to be true" under the circumstances. Sec. 1.6662-3(b)(1)(ii), Income Tax Regs. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Id. subpara. (2).

We agree with respondent that petitioners were negligent and disregarded rules and regulations when they claimed loss deductions under section 165 on their amended 2009 Federal income tax returns. Section 165 allows deductions only for "bona fide" losses, and substance and not mere form governs in determining whether a loss is deductible. Sec. 1.165-1(b), Income Tax Regs. At the time petitioners filed the amended returns in which they claimed the loss deductions under section 165, Kelmark had already entered into the amendment with the City of Los Angeles that extended the terms of the towing contract for an additional five-year period. As previously discussed at length, Kelmark continued to enjoy the benefits of the towing contract during the interim period, and, in substance, it suffered no loss during tax year 2009. Claiming a deduction for a loss under section 165 when no loss has actually occurred would seem to be "too good to be true" to a reasonable and prudent person, and petitioners acted negligently in failing to ascertain the correctness of the deductions. Further, petitioners were careless when they did not exercise reasonable diligence to

[*21] ascertain whether their claimed loss deductions were contrary to the requirement that only bona fide losses are allowed as deductions under section 165. See sec. 1.165-1(b), Income Tax Regs. Respondent has met his burden of production to show that petitioners were negligent and disregarded rules and regulations by claiming loss deductions to which they were not entitled.

Section 6664(c)(1) provides that taxpayers may avoid a penalty for any portion of an underpayment under section 6662 if they are able to demonstrate that there was reasonable cause for such portion and that the taxpayers acted in good faith with respect to such portion. Reasonable cause and good faith are determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayers' efforts to assess their proper tax liabilities. Id.

Reliance on professional advice may constitute reasonable cause and good faith, but "it must be established that the reliance was reasonable." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd on another issue, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). We have previously held that the taxpayer must satisfy a three-prong test to be found to have reasonably relied on professional advice to negate a section 6662(a) accuracy-related penalty: (1) the adviser was a competent professional who had sufficient experience to justify the

**[\*22]** reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners do not meet two of the requirements laid out in Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99.  Petitioners argue that they relied on certified public accountants to prepare both their 2009 individual Federal income tax returns and Kelmark's 2009 partnership tax return.  While we take petitioners at their word that they relied in good faith on their preparers' judgment, petitioners have not established that the preparers were competent professionals with sufficient experience to justify relying on their advice.  Petitioners did not provide any information about the individuals who prepared their 2009 individual Federal income tax returns or Kelmark's 2009 partnership tax return.  Apart from the preparers' names being listed as paid preparers on the returns, the Court has no information about these individuals because their names, backgrounds, and expertise were not mentioned or detailed in the record.  Moreover, petitioners have not established what information was given to the preparers.  In sum, the record establishes that petitioners do not qualify for relief from any portions of the section 6662 penalties on the basis of the defense of reasonable reliance.

**[*23]** In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

    To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent in docket No. 28810-13</u>.

<u>Decision will be entered under</u>

<u>Rule 155 in docket No. 28865-13</u>.